Jazmyne D. Alverson, Esq. (338259)
JAZMYNE D ALVERSON LAW OFFICE, PC
1100 Town and Country Road Suite 1250
Orange, CA 92868
(909)235-9001
Jazmyne@jdalawoffice.com

**Attorney for Claimant, Hamid Kamara**

**FEDERAL COURT OF THE UNITED STATES**

**IN THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HAMID KAMARA<br><br>Claimant,<br><br>v.<br><br>SAN BERNARDINO POLICE DEPARTMENT; DOES 1-10; | **Case No.: 5:25-cv-00446-MEMF-SP**<br><br>**SECOND AMENDED COMPLAINT FOR:**<br>**(1) UNLAWFUL ARREST;**<br>**(2) UNLAWFUL SEARCH AND SEIZURE;**<br>**(3) VIOLATION OF THE 1983 FEDERAL CIVIL RIGHTS ACT;**<br>**(4) VIOLATION OF THE CALIFORNIA CIVIL RIGHTS ACT;**<br>**(5) FALSE IMPRISONMENT BY A PEACE OFFICER;**<br>**(6) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; and**<br>**(7) DEFAMATION OF CHARACTER** |

To the Defendants in this matter and their attorney(s) herein:

PLEASE TAKE NOTICE that Plaintiff, Hamid Kamara, hereby brings forth this action before the above captioned court, alleging as follows.

**PARTIES**

1. Plaintiff, HAMID KAMARA, is a resident of San Bernardino County California who was

unlawfully detained in his underwear and injured as a result of the Defendants actions;

2. Defendant, San Bernardino Police Department (Hereinafter "the Department"), is a government entity or municipality with its principal place of business being in the County of San Bernardino, in the State of California;

3. Plaintiff alleges at all times mentioned herein, the true names or capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to Plaintiff. Therefore, Plaintiff sues these Doe defendants by such fictitious names. The plaintiff will seek to amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of these fictitious named defendants is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages as alleged were approximately caused by their conduct.

**JURISDICTION AND VENUE**

4. Plaintiff incorporates by reference the above-mentioned paragraphs and realleges them as if set forth below;

5. The incident described below occurred in the City of San Bernardino, California, on March 22, 2024, thereby making the jurisdiction proper.

6. The Department is a government entity whose principal place of business is in the City of San Bernardino, California, making the venue proper.

**COMPLIANCE WITH GOVERNMENT CODE §911.2**

7. Plaintiff incorporates by reference the above-mentioned paragraphs and realleges them as if set forth below;

8. Mr. Kamara presented his claims to the City of San Bernardino on or around August 29,

2024, in compliance with Government Code §911.2.

9. The claim was denied on October 25, 2024, claiming that the actions listed below were in compliance with the Department's policy, the denial did not detail which policies the officers had complied with.

**STATEMENT OF FACTS**

10. Mr. Kamara was a resident at 5694 N. E STREET SAN BERNARDINO, CA 92407 (hereinafter "Residence");

11. On March 22, 2024, a neighbor inquired whether Mr. Kamara lived at his residence while he was bringing in groceries. Unbeknownst to him, the neighbor called the police;

12. Shortly after, he heard his doorbell ring. Mr. Kamara was in the middle of getting undressed. He was not expecting company or mail, so he decided to let the landlord answer using the ADT/Security camera system if needed. There were no announcements as to who was at the door;

13. After continuous knocking, Mr. Kamara inquired as to who was at the door by way of his window and asked if they needed help;

14. One San Bernardino Police Officer approached his window and asked him to come outside because they wanted to talk to him;

15. Mr. Kamara was not wearing pants. He expressed that he needed to get dressed because he was in his underwear;

16. The Officer did not care. They could clearly see into the window and, nonetheless, stated that what he had on was fine. One of the officers ("Officer 1") drew his weapon, and insisted that he come out of his home;

17. Once he approached the door, in his underwear, Mr. Kamara was immediately detained,

handcuffed, and placed in the back of a police car;

18. The Officers asked Mr. Kamara for his identification. He said that it was in his wallet. Mr. Kamara did not give the officers consent to search through his belongings;

19. By information and belief, the Police Officers proceeded with a warrantless search of Mr. Kamara's room and belongings;

20. Either before or after searching his home, the officers informed Mr. Kamara that there was a report of suspicious activity in the area;

21. Once released, Mr. Kamara asked for the officers' badge numbers and supervisor, but both were refused.

## FIRST CAUSE OF ACTION
## (UNLAWFUL ARREST/DETENTION)

22. Mr. Kamara repeats and realleges each allegation in the above-referenced paragraphs and incorporates them as if set forth below;

23. San Bernardino Police Officers arrested and detained Mr. Kamara without a warrant and without probable cause by placing him in handcuffs and holding him in the back of a police car as they searched his home;

24. Mr. Kamara suffered actual harm by his rights being violated, his security in his home being violated, and the shame, torment, and other emotional harm related to being arrested while in your underwear without just cause;

25. The conduct of San Bernardino Police was a substantial factor in causing Mr. Kamara's harm;

## SECOND CAUSE OF ACTION
## (UNREASONABLE SEARCH)

26. Mr. Kamara repeats and realleges each allegation in the above-referenced paragraphs and

incorporates them as if set forth below;

27. Department Officers searched Mr. Kamara's home, wallet, and personal belongings;

28. The Officers did not have a warrant and Mr. Kamara did not give his consent to being searched;

29. The Officers were acting or purported to act in the performance of their official duties;

30. Mr. Kamara was harmed in that his Fourth Amendment and Fourteenth Amendment rights were violated;

31. The Officers search was a substantial factor in causing Mr. Kamara's harm;

## THIRD CAUSE OF ACTION
## (VIOLATION OF 1983 FEDERAL CIVIL RIGHTS ACT 42 U.S.C. §1983)

32. Mr. Kamara repeats and realleges each allegation in the above-referenced paragraphs and incorporates them as if set forth below;

33. San Bernardino Police Officers intentionally detained Mr. Kamara, and searched his home and belongings without a warrant or probable cause to do so;

34. San Bernardino Police Officers acted or purported to act in the performance of their official duties;

35. San Bernardino Police Officers conduct violated Mr. Kamara's Fourth Amendment right to be secure in his own home and free of unlawful searches and seizures;

36. The constitutional violations harmed Mr. Kamara, along with the shame and humiliation of being detained outside of his home, in his underwear;

37. San Bernardino Police Officer's unlawful detention and search was a substantial factor in causing Mr. Kamara's harm.

38. Mr. Kamara called for a supervisor to come to his place of residence to initiate a complaint.

39. The supervisor did not provide information on the officers, nor did he express any sentiment to suggest that the officers were out of compliance with policies or Mr. Kamara's rights.

40. Upon presenting a government claim to the City of San Bernardino, the claim was denied.

41. Representatives for the City stated that the Officers followed policy.

42. Representatives did not state which policies the officers were in compliance with.

43. Mr. Kamara was left with no choice but to review the policies online to get a better understanding.

44. Upon further review of the San Bernardino City policies, Mr. Kamara could only speculate which policies the officers may be in compliance with - due to the City's failure to state which policies were followed.

a. Handcuffing and Restraints - San Bernardino Police Department Policy Manual (Dated 03/19/2024) Policy 306:

i. "When deciding whether to use any restraint, officers should carefully balance officer safety concerns with factors that include, but are not limited to:

1. The circumstances or crime leading to the arrest.
2. The demeanor and behavior of the arrested person.
3. The age and health of the person.
4. Whether the person is known to be pregnant.
5. Whether the person has a hearing or speaking disability. In such cases, consideration should be given, safety permitting, to handcuffing to the front in order to allow the person to sign or write

notes.

6. Whether the person has any other apparent disability."

ii. 306.3.1: "Unless arrested, the use of restraints on detainees should continue only for as long as is reasonably necessary to assure the safety of officers and others."

iii. The officers are also informed that handcuffing is up to the officer's discretion.

b. Search Protocol - San Bernardino Police Department Policy Manual (Dated 03/19/2024) Policy 322:

i. Policy 322 appears to acknowledge the fundamental privacy rights of individuals and states that it encourages its officers to follow federal and state laws. Simultaneously, however, the department notes multiple exceptions to unlawful searches:

1. Valid consent
2. Incident to a lawful arrest
3. Legitimate community caretaking interests
4. Vehicle searches under certain circumstances
5. Exigent circumstances

ii. Section 322.3 goes on to state that each member of their department is expected to act in each situation according to current training and his/her familiarity with clearly established rights as determined by case law.

iii. Section 322.4 requires officers to conduct searches with dignity and courtesy, explaining the reason for the search with due regard and respect

for private property.

c. Mr. Kamara does not know if the Policy Manual dated 2024/03/19 is the true and correct copy of the department's policies at the time of his detention, and the City does not make it clear in their rejection of his government claim.

d. The Police Department gives its officers broad discretion in their training manual; it leaves room for interpreting the meaning of “exigent circumstances”, “legitimate community caretaking interest”, and “the demeanor and behavior of the person arrested.”

e. The San Bernardino Police Department has a reputation in the surrounding community for not using sound discretion or reason when affectuating an arrest, including unlawful use of force and officer involved shootings[1];

f. Between 2013 and 2023, the San Bernardino Police Department had 30 killings by police, which is more than 95% of departments;

g. According to the data, the City of San Bernardino is 12% Black, making up 31% of arrests and 20% of officer-involved deaths;

h. Between 2016 and 2022, there were 231 civilian complaints, with 20% of the complaints being ruled in favor of the civilians;

i. There were also 39 use-of-force complaints during the same time period, with only 3% being ruled in favor of the civilians;

[1] Information cited is gather from PoliceScoreCard.Org who provided San Bernardino Police a score of 45% https://policescorecard.org/ca/police-department/san-bernardino. Police Score Card derives their data from the California Department of Justice, the Uniform Crime Report, Mapping Police Violence, the U.S. Census, and the Federal LEOKA Database.

j. In 2024, the San Bernardino Police Department had 78 civilian complaints and 5 complaints related to racial profiling. Of the 78 reported complaints, 12 were sustained, 10 were exonerated, and 38 of the complaints were ruled unfounded. Of the five complaints related to racial profiling, four were unfounded and one is pending[2].

k. Mr. Kamara is African-American, the San Bernardino officers approach did not consider the overal circumstances - Mr. Kamara being in his underwear, not exhibiting any threatening behavior - in connection with his rights, increasing the likelihood that his arrest violated his Fourteenth Amendment right to equal protection, Fourth and Fourteenth Amendment right to be secure in his own home and free from unlawful search.

**FOURTH CAUSE OF ACTION**
**(VIOLATION OF THE BANE ACT CALIFORNIA CIVIL CODE §52.1)**

45. Mr. Kamara repeats and realleges each allegation in the above-referenced paragraphs and incorporates them as if set forth below;

46. Officer 1 pulled his gun out on Mr. Kamara without just cause, Mr. Kamara was immediately treated like a criminal in his own home without posing a threat in any manner;

47. San Bernardino City Police Officers unlawfully detained Mr. Kamara and searched his belongings without his consent;

48. Seeing that Officer 1 had his gun drawn, Mr. Kamara was intimidated and feared for his safety. Officer 1's intimidation and coercion caused Mr. Kamara to reasonably believe that he could not deny speaking with them without a warrant or probable cause;

49. The Officer's conduct caused Mr. Kamara to believe that he must cooperate with them in

[2] Source: California Department of Justice https://openjustice.doj.ca.gov/data Civilians' Complaints Against Peace Officers

effectuating an unlawful seizure;

50. The Officer's denied Mr. Kamara his right to retrieve their names, badge numbers, and supervisor's name;

51. The Officers intended to deprive Mr. Kamara of his enjoyment of the interest protected by the right to privacy, the right from unlawful searches, and the right from unlawful seizures;

**FIFTH CAUSE OF ACTION**
**(FALSE IMPRISONMENT BY A POLICE OFFICER)**

52. Mr. Kamara repeats and realleges each allegation in the above-referenced paragraphs and incorporates them as if set forth below;

53. The San Bernardino Police intentionally deprived Mr. Kamara of his freedom of movement by drawing his weapon, telling Mr. Kamara to come outside (despite being in his underwear), handcuffing him, and placing him in the back of a police vehicle,

54. That detention compelled Mr. Kamara to stay in the police vehicle for an appreciable amount of time;

55. Mr. Kamara did not consent to being detained;

56. Mr. Kamara was actually harmed;

57. The Department's conduct was a substantial factor in Mr. Kamara's injury;

**SIXTH CAUSE OF ACTION**
**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

58. Mr. Kamara repeats and realleges each allegation in the above-referenced paragraphs and incorporates them as if set forth below;

59. San Bernardino Police Officers abused a position of authority that affected Mr. Kamara's interests;

60. Department Officers knew that drawing a weapon and causing Mr. Kamara to come

outside in his underwear would cause significant emotional distress;

61. Department Officers knew that their conduct would likely result in harm due to mental distress;

62. The Department's actions caused Mr. Kamara actual harm and significant emotional distress.

**SEVENTH CAUSE OF ACTION**
**(DEFAMATION OF CHARACTER – AS TO DOE DEFENDANT #4)**

63. Mr. Kamara repeats and realleges each allegation in the above-referenced paragraphs and incorporates them as if set forth below;

64. Doe Defendant #4 harassed Mr. Kamara by questioning whether he belonged in the neighborhood or lived at the house in which he was residing;

65. Mr. Kamara is informed and believes that Doe Defendant #4 knowingly and willfully made a false statement to the police Department accusing Mr. Kamara of committing a crime;

66. Doe Defendant #4 visited Mr. Kamara's residence a second time, after police left, further accusing Mr. Kamara and questioning Mr. Kamara about his right to be at his residence.

**PRAYER FOR RELIEF**

Whereby, Mr. Kamara requests:

1. $50,000 pursuant to California Civil Code §52.1(c);
2. $250,000 in mental and emotional suffering, anguish, shame, and embarrassment;
3. Attorney fees associated with this cause of action;
4. Any other relief the court may deem appropriate.

**Dated: August 4, 2025** **Respectfully Submitted,**

JAZMYNE D. ALVERSON LAW OFFICE, PC

Jazmyne Alverson

JAZMYNE D. ALVERSON, ESQ.

Attorney for Hamid Kamara

**DECLARATION OF ELECTRONIC SERVICE**

Central District of California Case No. 5:25-cv-00446-MEMF-SP Service of the attached document was accomplished pursuant to Central District of California, Order Authorizing Electronic Filing, General Order No. 08-03 and Local Rule 5-3.2.1, which provides: "Upon the electronic filing of a document, a 'Notice of Electronic Filing' ("NEF") will be automatically generated by the CM/ECF system and sent by e-mail to: (1) all attorneys who have appeared in the case in this Court and (2) all pro se parties who have been granted leave to file documents electronically in the case pursuant to L.R. 5-4.1.1 or who have appeared in the case and are registered to receive service through the CM/ECF System pursuant to L.R. 5-3.2.2. Unless service is governed by F.R. Civ.P. 4 or L.R. 79-5.3, service with this electronic NEF will constitute service pursuant to the Federal Rules of Civil and Criminal Procedure, and the NEF itself will constitute proof of service for individuals so served".

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Dated: 08/04/2025 Signed,

Jazmyne Alverson

Jazmyne D Alverson, Esq.

Declarant